**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| SATISH MANTRI<br>113 Beverly Hills Terrace<br>Apt. A<br>Woodbridge, NJ, 07095<br><br>Plaintiff,<br><br>    against<br><br><br>UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES,<br>20 Massachusetts Ave NW,<br>Washington DC 20529<br><br><br>          Defendant. | Case No.:<br><br><br>COMPLAINT |

## COMPLAINT

## BACKGROUND

1. This case involves review under the Administrative Procedure Act of a decision of the United States Citizenship and Immigration Services (USCIS) in File No. WAC 920450329 denying a petition by a U.S. employer (Populus Group LLC) to classify the plaintiff, Satish Mantri (*hereinafter* "Mr. Mantri"), as an H-1B nonimmigrant so that it might employ him on a temporary basis in a "specialty occupation" pursuant to 8 U.S.C. § 1101(a)(15)(H)(i)(B).

2. As will be shown, the USCIS' decision denying Populus Group LLC's petition to classify Mr. Mantri as an H-1B nonimmigrant was arbitrary because it ignored important evidence contradicting its position that Populus Group did not establish that Mr. Mantri had a bachelor's degree in a specialty needed for the position in which Populus Group wished to employ him.

### THE COURT HAS SUBJECT JURISDICTION OVER THIS ACTION.

3. Being a civil action against the United States arising under the Administrative Procedure Act, 5 U.S.C. § 551, *et. seq.,* a law of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

### THE PLAINTIFF HAS STANDING TO BRING THIS ACTION

4. As the D.C. Circuit Court of Appeals said in finding that the beneficiary of a labor certification filed by a potential employer had standing to seek judicial review under the Administrative Procedure Act (APA) of its denial, even though the prospective employer was not a party to the action:

neither the statute's text, structure, nor legislative history supplies the requisite "clear and convincing evidence" of a preclusive purpose. *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967); *see also Shook v. District of Columbia Fin. Responsibility & Management Assistance Auth.*, 328 U.S. App. D.C. 74, 132 F.3d 775, 778-79 (D.C. Cir. 1998). Unlike in *Block v. Community Nutrition Inst.*, 467 U.S. 340, 348, 81 L. Ed. 2d 270, 104 S. Ct. 2450 (1984), for example, where the statute itself set forth a regulatory regime that omitted mention of certain parties, giving rise to an inference that those parties were precluded from litigating in court, *see Block*, 467 U.S. at 349, there is no indication here that Congress itself considered the mechanism by which the Secretary of Labor would make labor certification decisions, or how (and at the request of whom) such decisions would be reviewable in the federal courts. And while the legislative history indicates that Congress intended to restrict further the admission of alien workers when it amended the statute in 1965, *see* S. REP. No. 748, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S. CODE CONG. & ADMIN. NEWS 3328, 3333, that does not speak to the question whether the class of aliens deserving of admission under the statute have standing to challenge in court the Secretary's decision to the contrary. The regulatory regime is completely a creation of the Labor Department's regulations, and under the Administrative Procedure Act, it is only statutes, not agency regulations, that can preclude

otherwise available judicial review. *See* 5 U.S.C. § 701(a)(1); *Gladysz*, 595 F. Supp. at 53-54. In light of the presumption of judicial review, *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991); *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986), we cannot conclude (despite our suspicions) that Congress intended to preclude the alien from challenging labor certification denials without the alien's employer. *See Block*, 467 U.S. at 351 (holding that, where substantial doubt about congressional intent exists, the general presumption favoring judicial review is controlling).

*Ramirez v. Reich*, 156 F.3d 1273, 1276 (1998)

5. Here likewise neither the INA's text, structure nor legislative history supplies the requisite "clear and convincing purpose" of an intent to preclude the beneficiary of a nonimmigrant visa petition from seeking judicial review of a denial.

6. Accordingly, here as in *Ramirez*, there is no basis for concluding that Congress intended to preclude the beneficiary of an application for immigration benefits filed by his prospective employer from seeking judicial review of a denial of the same without said employer.

7. Therefore the plaintiff has standing to bring this action even without his prospective employer as a party.

## PLAINTIFF HAS NO ADMINISTRATIVE REMEDIES TO EXHAUST

8. The beneficiary has no right to administratively appeal a USCIS denial of his employer's petition to classify him as an H-1B nonimmigrant, 8 C.F.R. §214.2(h)(10)(ii), nor the denial of his application for extension of stay. *Id.* Therefore he cannot be said to have failed to exhaust his administrative remedies, because he has none.

## CAUSES OF ACTION

I. THE USCIS' DECISION WAS ARBITRARY AND SO SHOULD BE HELD UNLAWFUL AND SET ASIDE BECAUSE IT IGNORED CRITICAL FACTS CONTRADICTING ITS CONCLUSION THAT MR. MANTRI DID NOT HAVE THE EQUIVALENT OF A DEGREE NEEDED FOR THE SPECIALTY OCCUPATION

9. 5 U.S.C. § 706 provides in material part that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an <u>agency action</u>. The reviewing court shall—
>
> …
> **(2)** hold unlawful and set aside <u>agency action</u>, findings, and conclusions found to be—
> **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

10. Inasmuch as it will be shown that the instant decision was arbitrary, this Court should find it unlawful and set it aside.

11. Mr. Mantri was at the time of filing, employed by Populus Group in H-1B status. Petition, EXHIBIT B, at 29, 70-79;

12. On approximately April 30, 2019, Populus Group filed a petition to extend Mr. Mantri's H-1B status on the basis of an offer of new employment to him. Exhibit B.

13. It is undisputed that the job offered Mr. Mantri was in a specialty occupation inasmuch as the USCIS commented in its decision of May 7, 2020, that "(i)t appears from your descriptions of the position that the beneficiary will perform the duties of an Information Security Analysts (sic). You also provided a certified Labor Condition Application (LCA) for an Information Security Analysts (sic) position. The Occupational Outlook Handbook indicates that many Information Security Analysts

have bachelor's degrees in Computer Science, Information Assurance, Programming, or a related field." Decision, attached as Exhibit A, at 2-3.[1]

14. The USCIS ultimately denied the petition solely because it held that Populus Group had "not shown that the beneficiary has education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States bachelor's degree or higher in the specialty (and that it has) not shown that the beneficiary has recognition of expertise in the specialty through progressively responsible positions relating to the specialty." Exhibit A at 5 (parenthetical material added for clarity).

15. However, in coming to that conclusion the agency disregarded almost all of the "evaluation of education training and experience" issued by Dr. David Bellehsen, Associate Professor, Department of Computer Systems Technology, The New York City College of Technology / City University of New York. Response to Request for Evidence, Exhibit D, at 75-81.

16. Although the Decision acknowledged the existence of this evaluation, Exhibit A at 5, it ignored the fact that it was issued by an official who had authority to grant college-

---

[1] In fact, the OOH states that "Information security analysts usually need at least a bachelor's degree in computer science, information assurance, programming, or a related field." Occupational Outlook Handbook > Computer and Information Technology >Information Security Analysts/How to Become One. https://www.bls.gov/OOH/computer-and-information-technology/information-security-analysts.htm#tab-4 (last accessed 5/24/2020). The word "normally" means "commonly, usually ... in normal circumstances ... under normal conditions...." Webster's Third New International Dictionary 1540 (unabridged ed. 1986)." *U.S. v. Delgado*, 61 F.3d 904 (Table) (6th Cir. 1995). Therefore Information Security Analyst meets even more precisely met the definition of specialty occupation contained in 8 CFR 214.2(h)(4)(iii)(A)(1) than the USCIS was willing to concede. However, inasmuch as the USCIS did not dispute that the job offered was a specialty occupation, this fact is not material to this action.

5

level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience. Exhibit D at 76, 82.

17. The Decision also ignored the fact that Dr. Bellehsen found that Mr. Mantri had progressively responsible experience in the field of Information Technology, Exhibit D at 76, 80, which, when combined with his education, was the equivalent to completion of a United States baccalaureate or higher degree in Information Technology, *Id.* at 80, and had progressively responsible positions directly related to Information Technology. *Id.* at 78.

18. Indeed, the only observation the USCIS made regarding Dr. Bellehsen's evaluation was "(f)urther, the evaluation from the college official at the City University of New York is considered from a recognized authority. However, the evaluation from the college official at the City University of New York is not sufficient to meet the requirements for evidence of recognition of expertise per 8 CFR § 214.2(h)(4)(iii)(D)(5)." Exhibit A at 5.

19. The USCIS at no time even considered whether the evaluation showed that Mr. Mantri had the equivalent of a qualifying degree under 8 CFR § 214.2(h)(4)(iii)(D)(1), which was certainly Populus Group's purpose in submitting the evaluation.

20. The USCIS' complete disregard for Dr. Bellehsen's evaluation except for the acknowledgment (irrelevant to establishing that he had the equivalent of a bachelor's degree in the specialty under § 214.2(h)(4)(iii)(D)(1)) that he was a "recognized

authority" is material to its decision because the evaluation showed that Mr. Mantri was qualified to perform services as an Information Security Analyst.

21. Dr. Bellehsen concluded that Mr. Mantri qualified to perform services in the information security analyst specialty occupation because he met the 4th criterion of 8 C.F.R. § 214.2(h)(4)(iii)(C) in that he found that Mr. Mantri had education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States baccalaureate or higher degree in the specialty occupation, and ha(d) recognition of expertise in the specialty through progressively responsible positions directly related to the specialty. Exhibit D at 79-80.

22. Further, this conclusion was reinforced by the fact that 8 CFR **214.2(h)(4)(iii)(D)** provides in relevant part that:

Equivalence to completion of a college degree. For purposes of paragraph (h)(4)(iii)(C)(4) of this section, equivalence to completion of a United States baccalaureate or higher degree shall mean achievement of a level of knowledge, competence, and practice in the specialty occupation that has been determined to be equal to that of an individual who has a baccalaureate or higher degree in the specialty and shall be determined by one or more of the following:

**(1)** An evaluation from an official who has authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience;

23. Dr. Bellehsen, as mentioned, is an official who has authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience. Exhibit D at 76, 82.

24. Consequently, by disregarding the fact that Dr. Bellehsen had that authority and had found that Mr. Mantri had gained the equivalent of a bachelor's degree in Information

Technology through a combination of education and progressively responsible experience, and had held progressively responsible positions directly related to that specialty, the USCIS ignored evidence contradicting its conclusion that he lacked the equivalent of a bachelors degree in a field required for the offered specialty occupation[2]. Exhibit A at 5.

## COUNT II

**INASMUCH AS THE DENIAL OF POPULUS GROUP'S PETITION WAS ABITRARY SO TOO WAS THE DENIAL OF MR. MANTRI'S APPLICATION FOR EXTENSION OF HIS H-1B STATUS**

25. The sole ground for the denial of Mr. Mantri's extension of his H-1B status was the arbitrary denial of Populus Group's petition upon his behalf. Therefore it too should be held unlawful and set aside. Exhibit A at 7.

## CONCLUSION

Both the Decisions complained of in this action were arbitrary and so should be held unlawful and set aside. Further, inasmuch as the USCIS' arbitrary decisions have unreasonably

---

[2] Note that Information Technology is a degree required to be an Information Security Analyst in that incumbents in the "job usually need at least a bachelor's degree in computer science, information assurance, programming, or a related field" Occupational Outlook Handbook > Computer and Information Technology >Information Security Analysts/How to Become One, and Information Technology is a job closely related to Computer Science in that they are both among only 5 "computing disciplines". CERIC, COMPUTING CAREERS & DISCIPLINES: A QUICK GUIDE FOR PROSPECTIVE STUDENTS AND CAREER ADVISORS, FOR PROSPECTIVE STUDENTS, https://ceric.ca/resource/computing-disciplines-quick-guide-prospective-students-career-advisors/ (last accessed May 24, 2020).

delayed a proper adjudication in this matter, the agency should be compelled to render a new decision in both matters within no more than thirty (30) days of the date of this Court's Order setting them aside. 5 U.S.C. § 706(1).

      Respectfully Submitted this  25th  day of May, 2020


s/*Michael E. Piston*
Michael E. Piston (MI 002)
225 Broadway Suite 307
New York, NY 10007
646/845-9895
Fax: 206-770-6350
Michaelpiston4@gmail.com